IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 23-CR-333-SEH-1 |
| v. | |
| AARON MICHAEL THOMAS, | |
| Defendant. | |

**United States' Sentencing Memorandum**

The Court should sentence defendant Aaron Michael Thomas to a total sentence of 84 months imprisonment, followed by lifetime supervised release. In support of this memorandum, the government incorporates by reference the facts and arguments in its sealed motion (Dkt. #112), including specific argument as to the appropriate sentences for Counts One and Counts Two. The United States notes that it has received the Pre-Sentence Report (PSR) from the United States Probation Office, and has no objections.

**Factual and Procedural History**

I.     **Initial Investigation**

Beginning in late 2022, the Food and Drug Administration Office of Criminal Investigation (FDA OCI), along with the U.S. Postal Inspection Service, opened an investigation into an illegal vendor of drugs known by the monikers "Loveandhate" and "Loveandhatev2." The vendor set up on various Dark Web "marketplace"

1

websites, and sold prescription drugs to buyers in exchange for cryptocurrency. PSR at ¶ 8. "Loveandhate" shipped the drugs to purchasers via parcels of U.S. Mail. On its Dark Web websites, "Loveandhate" advertised the sale of bulk amounts of drugs, including selling many drugs by the pound or kilogram. The FDA OCI suspected that "Loveandhate" was one of the largest illegal prescription drug vendors in the country. "Loveandhate" sold the drugs without the requirement of a prescription, and used misleading and false labeling on the drug packages that did not accurately reflect what drug was in the package, or bear any warnings or directions for safe use.

Law enforcement learned that all of the packages from "Loveandhate" originated from a residential address in Tulsa at 1847 West 57th Place. *Id*. The residence was the home of defendant Thomas and co-defendant Darren Doil Means. Throughout 2023 the FDA made three "undercover purchases" from the "Loveandhate" vendor, purchasing gabapentin, xylazine, and pregabalin. *Id*. at ¶¶ 10-12. In its final undercover purchase from "Loveandhate", the FDA ordered pregabalin on August 15, 2023. *Id*. at ¶12.

Just hours after the FDA's last undercover purchase order, agents saw Thomas and Means leave their residence with several packages and drop them off in a nearby U.S. Postal Service "blue box" mail drop. After the defendants left, agents opened the "blue box" and retrieved the packages left by the defendants and found a package of pregabalin consistent with the agents purchase made hours earlier.

On October 24, 2023, law enforcement executed a federal search warrant (23-MJ-561-CDL) at Thomas and Means's home. *Id*. at ¶14. There, agents seized over 270

pounds of 21 different drugs or active pharmaceutical ingredients (API). Amongst numerous drugs/APIs, agents seized approximately 30 kilograms of pregabalin, a Schedule V controlled substance. *Id*. Agents also seized approximately 9.16 kilograms of xylazine, a veterinary drug not approved for human use.

In addition to the drugs, agents found a room in the residence that appeared to be outfitted to operate as a packaging and distribution center for the shipment of the drugs/APIs. It included large amounts of packaging and shipping materials, encapsulating devices for making drug capsules, and postal shipping and drug labels. These drugs labels were consistent with the misleading labeling that the FDA OCI agents received on the drugs they purchased undercover from the "Loveandhate" Dark Web vendor. Agents also seized numerous digital devices at the home. The digital information found on these devices suggested that defendant Thomas illegally purchased all the drugs/APIs from vendors in the People's Republic of China, and that he took deliberate steps to avoid detection by U.S. Customs when shipping the drugs/API into the United States.

## II. Indictments and Discovery of Child Pornography

A grand jury returned an indictment against Thomas and Means on October 19, 2023, that charged three counts of Introduction of Misbranded Drugs into Interstate Commerce in violation of 21 U.S.C. §§ 331(a) and 333(a)(2). *Id*. at ¶1. Those three counts related to the three "undercover purchases" the FDA made prior to the residential search warrant. On January 17, 2024, following the search warrant, a federal grand jury returned a seven-count superseding indictment against Thomas

and Means that included the misbranding counts as well as additional counts for: Drug Conspiracy, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(3), 856(a)(1) and 856(b); Possession of Pregabalin with Intent to Distribute, 21 U.S.C. §§ 841(a)(1) and 841(b)(3); Maintaining a Drug-Involved Premises, 21 U.S.C. §§ 856(a)(1) and 856(b); and Smuggling Goods into the United States, 18 U.S.C. § 545. *Id.* at ¶3.

During the review of the digital devices seized from Thomas and Means from the residential search warrant, agents discovered in plain view what appeared to be child pornography. Agents ceased all review of the devices, and then sought and received an additional federal search warrant (24-MJ-267-MTS) in order to search the devices for evidence of the illegal possession of child pornography. During their search of a device pursuant to that warrant, agents found numerous images of child pornography, including prepubescent minors, and an infant or toddler engaged in sexually explicit conduct.

On November 27, 2024, pursuant to a plea agreement, Thomas plead guilty to a three-count felony information for violations of 21 U.S.C. §§ 331(a) and 333(a)(2) for Introduction of Misbranded Drugs into Interstate Commerce (Xylazine); 21 U.S.C. §§ 856(a)(1) and 856(b) for Maintaining a Drug-Involved Premises for the distribution of Pregabalin; and 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) for Possession of Child Pornography. Dkt. #93.

The U.S. Probation Office created a PSR for Mr. Thomas. The PSR applied USSG § 2N2.1 for the offense of Introducing a Misbranded Drug into Interstate Commerce, and USSG § 2D1.8 for the offense of Maintaining a Drug Related

Premises. PSR at ¶¶22 and 28. The calculated sentencing guideline range for Count Three was Level 28, 78 to 97 months imprisonment. *Id.* at ¶64. For Count Three, advisory range of supervised release is five years to life.

### Statement in Support of a Sentence - 18 U.S.C. § 3553(a)

The Government respectfully requests that the Court accept the plea agreement and sentence Thomas to 36 months imprisonment as to Count One, 63 months imprisonment as to Count Two, and 84 months imprisonment as to Count Three, to run concurrently, followed by lifetime supervised release.

"A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. U.S.*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* In calculating the appropriate advisory guideline range, the district court should consider all relevant conduct proven by a preponderance of the evidence. Relevant conduct under the Guidelines thus "'comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct.'" *United States v. Altamirano-Quintero*, 511 F.3d 1087, 1095 (10th Cir.2007) (quoting *United States v. Allen*, 488 F.3d 1244, 1254-55 (10th Cir.2007)). After determining the applicable advisory Guideline range, the district court must then consider the sentencing factors pursuant to 18 U.S.C. § 3553(a) to shape an appropriate sentence.

I. **History and characteristics of the defendant.**

Thomas has a criminal history category of I, with no prior arrests or convictions. He does report both physical and mental health conditions. Additionally, he reports some history of substance abuse.

II. **The need for the sentence imposed to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment.**

For several years, Thomas operated a large and illegal drug enterprise out of his home, illegally selling misbranded controlled substances and APIs in bulk over the Dark Web to unknown purchasers. Thomas conceived of and led the enterprise, and co-defendant Means assisted him. None of the drugs Thomas sold had appropriate and accurate labelling regarding their safe use, or indicating their status as prescription drugs or controlled substances. Many if not all of the drugs were dangerous, and could be harmful to humans if used improperly. At Thomas's sentencing hearing, the United States intends to call Dr. Arthur Simone, the Senior Medical Advisor for the FDA's Office of Unapproved Drugs and Labeling Compliance. Dkt. #30. Dr. Simone will testify regarding the dangers involved with xylazine and pregabalin. The government will also call FDA OCI Special Agent Lee Russell to testify about the scope and sophistication of Thomas's criminal activity.

In addition to the illegal drug and API distribution, Thomas possessed child pornography. Thomas possessed over 600 images as calculated by the sentencing guidelines. His collection included images of prepubescent minors, as well as the

sexual exploitation of an infant or toddler. Thomas's collection included primarily prepubescent males, including depictions of minors engaging in oral sodomy and anal sodomy with each other.

Both the drug offenses and the child pornography offenses are extremely serious. The total sentence in the case must be severe enough to reflect the gravity of Thomas's misconduct, and be appropriately strict enough to promote respect for the law. A sentence of 84 months of imprisonment will sufficiently serve this purpose.

### III. The need for the sentence to deter future criminal conduct, and protect the public.

In operating his illicit drug operation, Thomas effectively ignored the danger he was introducing into the public, without regard to the consequences of how the drugs might hurt the people who used them. While Thomas has no criminal history, the scale and brazenness of these offenses suggest that the sentence needs to be sufficiently strict in this case as to protect the public, and deter him from future criminal activity. Additionally, the sentence must deter other potential criminal wrongdoers. Thomas was apparently able to conceive, initiate, and operate his illegal drug operation without any specialized knowledge and with little outside assistance. In other words, he almost made the conduct of the offenses look easy. The sentence in this case must be strict enough to show other potential actors that this behavior is unacceptable, dangerous, and will be appropriately punished.

The same need for general deterrence also extends to the child pornography offense. Congress, the Supreme Court, and the Sentencing Commission have all previously emphasized the importance of general deterrence in child pornography cases. *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."). In *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007), the court opined that: "The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor."

The ample case law cited above emphasizes the importance of deterrence in cases such as this one. The sentence of imprisonment must be severe enough that both Thomas and all other potential possessors of child pornography are sufficiently discouraged from future offenses. Strict sentences in these cases are the only way to combat and erode the market for child pornography.

Finally, for specific deterrence and to protect the public, lifetime supervised release is appropriate. The government concedes that Thomas has no prior criminal history. However, his crimes show a widespread disregard for the lives and safety of other people, both those who consumed the drugs he sold, and the children victimized to create his child pornography. Having life-long touchpoints with the United States Probation Office will maximize his chances of succeeding after incarceration, and serve as necessary guardrails to prevent future misconduct. This is especially important given the child exploitation offense, and to prevent Thomas from encouraging the victimization of more children by possessing child pornography again in the future.

## Conclusion

Based upon the facts of this case, the seriousness of the offenses, and the factors discussed above, the government respectfully requests that the Court sentence defendant Thomas to 36 months imprisonment as to Count One, 63 months imprisonment as to Count Two, and 84 months imprisonment as to Count Three, to

run concurrently for a total of 84 months imprisonment, followed by lifetime supervised release.

Respectfully Submitted,

CLINTON J. JOHNSON
United States Attorney
Northern District of Oklahoma


*/s/ Nathan E. Michel*
Nathan E. Michel, KS Bar No. 25068
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1029

### Certificate of Service

I hereby certify that on February 24, 2025, I electronically submitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Ben Hilfiger
*Attorney for Defendant Thomas*

*/s/ Nathan E. Michel*
Nathan E. Michel
Assistant United States Attorney
